UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
GLENN P. BUTLER,

                              Plaintiff,

     – against –

POLICE OFFICER JOAQUIM BRITO and
COUNTY OF WESTCHESTER,

                             Defendants.

-------------------------------------------------------------------------x

No. 15-CV-9718 (CS)

**OPINION & ORDER**

Appearances:

Antoinette L. Williams
Antoinette L. Williams, P.C.
Pelham, New York
*Counsel for Plaintiff*

Sean T. Carey
Robert F. Meehan, Westchester County Attorney
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Plaintiff Glenn P. Butler asserts claims under 42 U.S.C. § 1983 arising out of his arrest by Defendant Police Officer Joaquim Brito. Before the Court is the Motion to Dismiss of Defendants Brito and the County of Westchester (the "County"). (Doc. 28.) For the reasons stated below, Defendants' Motion is GRANTED.

1

## I. BACKGROUND

### A. Facts

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint ("AC"). (Doc. 10.)

On December 13, 2014, Plaintiff had pulled his car over on a grassy area near the Hutchinson River Parkway and the Cross County Parkway in Mount Vernon, New York. (AC ¶ 9.)[1] He had not been in an accident. (*Id.* ¶ 17.) While Plaintiff and his passenger were outside of the car, Defendant Brito approached them. (*See id.* ¶ 10.) Defendant ordered Plaintiff and the passenger back into Plaintiff's car, and ordered Plaintiff to drive following Defendant in his car. (*Id.* ¶ 11.) Plaintiff followed Defendant to another area where there was a DWI check point, of which Plaintiff was not aware because it was not visible from the shoulder where he had pulled over. (*Id.* ¶ 12.) Defendant accused Plaintiff of trying to avoid the checkpoint, which Plaintiff disputed, and Defendant then accused Plaintiff of "busting his balls." (*Id.* ¶ 13.)

Defendant arrested Plaintiff and charged him with a violation of New York Vehicle & Traffic Law ("VTL") 1194(1)(b),[2] which Plaintiff contends is not a "legally cognizant [*sic*] offense" standing alone. (*Id.* ¶ 14.) At the scene, Plaintiff was handcuffed and subjected to a pat down. (*Id.* ¶ 33.) Plaintiff was never charged with a crime related to driving while intoxicated. (*See id.* ¶ 17.)

---

[1] I take judicial notice of the fact that these two parkways intersect in Mount Vernon.

[2] VTL § 1194(1)(b) provides:

> Every person operating a motor vehicle which has been involved in an accident or which is operated in violation of any of the provisions of this chapter shall, at the request of a police officer, submit to a breath test to be administered by the police officer. If such test indicates that such operator has consumed alcohol, the police officer may request such operator to submit to a chemical test in the manner set forth in subdivision two of this section.

2

After being taken into custody, Plaintiff submitted to a breathalyzer test. (*Id.* ¶ 17.) Plaintiff alleges that Defendant claimed at some unspecified time that Plaintiff refused a breathalyzer test, even though Defendant stated in a supporting deposition that Plaintiff did submit to such test. (*Id.* ¶ 15.) Plaintiff alleges that, while in custody, he was subjected to a search that was "much more intrusive" than the pat down on the side of the road. (*Id.* ¶ 33.) Defendant allegedly told Plaintiff that the ticket would be dismissed, and that he arrested Plaintiff because Plaintiff was "busting his balls" and giving Defendant a hard time about submitting to a breathalyzer test. (*Id.* ¶ 19.)

On June 2, 2015, a Mount Vernon City Judge dismissed Plaintiff's traffic ticket, concluding that "the refusal to submit to a breath test pursuant to [VTL] § 1194(1)(b) is not a cognizable offense." (*Id.* ¶ 20.)

On the date of the traffic stop, Plaintiff was working for Con Edison. (*Id.* ¶ 24.) His job required as a condition of employment that he report any arrests or traffic infractions, and after doing so he was suspended and ultimately terminated. (*Id.*) Plaintiff alleges that Defendant knew about Plaintiff's suspension and termination. (*Id.* ¶ 25.)

**B. Procedural History**

Plaintiff commenced this action by filing a complaint on December 11, 2015. (Doc. 1.) On April 28, 2016, Defendants submitted a pre-motion letter arguing that Plaintiff's complaint should be dismissed: (1) for failure to timely serve Defendants; (2) for failure to file a notice of claim; (3) because probable cause existed to arrest Plaintiff, rendering his arrest and search valid; and (4) because he failed to state a claim for municipal liability against the County. (Doc. 3.) Plaintiff responded on May 16, 2016, arguing that his failure to serve the complaint should be

3

excused, and disputing that probable cause existed based on the complaint's allegations. (Doc. 7.)

On May 19, 2016, the parties appeared for a conference to discuss Defendants' arguments. I explained to Plaintiff that boilerplate allegations regarding the County would not survive a motion to dismiss. Plaintiff clarified that he was not alleging any state-law claims and was separately challenging his arrest and the search pursuant to his arrest.

On July 11, 2016, Plaintiff filed the AC, which asserted claims under 42 U.S.C. § 1983 for unlawful search and false arrest, and a claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), asserting municipal liability against the County. (AC ¶¶ 28-55.)

## II. DISCUSSION

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

**B. False Arrest**

Claims for false arrest under § 1983 must be analyzed under the law of the state in which the arrest occurred. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, to prevail on a false arrest claim, Plaintiff must plausibly allege that (1) Defendant Brito intentionally confined him; (2) Plaintiff was aware of being confined; (3) Plaintiff did not consent; and (4) the confinement was not justified or otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003). An arrest by a police officer is privileged if it is based on probable cause. *Id.* at 135; *see Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is

5

committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "The existence of probable cause to arrest – even for a crime other than the one identified by the arresting officer – will defeat a claim of false arrest under the Fourth Amendment." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016).

Government officials exercising discretionary functions are entitled to qualified immunity shielding them from damages in a § 1983 suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), or insofar as it was objectively reasonable for them to believe that their conduct did not violate such rights, *see Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). A defendant is entitled to qualified immunity

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable . . . in light of the legal rules that were clearly established at the time it was taken.

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (citations, alterations, and internal quotation marks omitted). A right is clearly established if, given the specific facts and context of the case, it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (emphasis and internal quotation marks omitted); *see Creighton*, 483 U.S. at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action[,] assessed in light of the legal rules that were clearly established at the time it was taken.") (citation and internal quotation marks omitted). Thus, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal

quotation marks omitted). Because qualified immunity "entitlement is an immunity from suit rather than a mere defense to liability," it is important to resolve the question "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (emphasis omitted).

"An officer's [probable cause] determination is objectively reasonable if there was 'arguable' probable cause at the time of the arrest – that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013) (internal quotation marks omitted). With respect to false arrest, dismissal "is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see Arrington v. City of N.Y.*, 628 F. App'x 46, 49 (2d Cir. 2015) (summary order) ("For false arrest and malicious prosecution claims, an officer's probable cause determination is 'objectively reasonable' provided there was 'arguable' probable cause.").

"A traffic infraction is deemed an offense that can give rise to probable cause for arrest." *Quiles v. City of N.Y.*, No. 15-CV-1055, 2016 WL 6084078, at *6 (S.D.N.Y. Oct. 12, 2016) ("'For purposes of arrest without a warrant . . . a traffic infraction shall be deemed an offense.'") (quoting N.Y. Veh. & Traf. Law § 155); *see United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (stop, arrest, and search permitted under New York law for observed traffic infraction).

Defendants argue that probable cause existed to arrest Plaintiff for either parking illegally or for entering or exiting the highway unlawfully. (Doc. 30 at 12-13.) VTL § 1200 prohibits stopping, standing, or parking a vehicle when prohibited by law, rule, or regulation, "except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal." N.Y. Veh. & Traf. Law § 1200(a). Regulations

7

applicable to special parkways, which include the Hutchinson River Parkway and Cross County Parkway, N.Y. Transp. Law § 70(2), prohibit "[p]arking, standing or stopping . . . , except in areas designated by the authority or except in cases of emergency," 17 N.Y.C.C.R.R. § 182.27(a). A separate special parkway regulation states, "[N]o vehicle may enter or leave the parkway system except by means of entrances and exits provided for such purposes," 17 N.Y.C.C.R.R. § 182.23.

The proper inquiry is whether, according to the AC, Defendant Brito knew of facts establishing at least arguable probable cause at the time he arrested Plaintiff.[3] Here, according to the allegations in the AC, Defendant observed Plaintiff's vehicle parked in a grassy area near where two parkways meet. (AC ¶ 9.) He also observed Plaintiff and a passenger in that grassy area outside of Plaintiff's vehicle. (*Id.* ¶ 10.) These two observations established probable cause to believe Plaintiff had violated § 182.27(a), which prohibits parking, standing, or stopping on a special parkway outside designated areas or absent emergency.

The existence of exceptions to the prohibition against stopping or parking on a special parkway does not defeat probable cause, despite Plaintiff's arguments to the contrary. A police officer is not required to investigate all possible circumstances supporting a suspect's innocence before effecting an arrest. *See Ricciuti*, 124 F.3d at 128. Although in some circumstances an "officer's awareness of the facts supporting a defense can eliminate probable cause," *Jocks*, 316 F.3d at 135, Plaintiff has not alleged any facts that could plausibly have defeated probable cause. Plaintiff has not alleged that he pulled off of the parkway because of an emergency, or that he was directed to do so by law enforcement, or that he was in a designated area, let alone any facts

---

[3] Plaintiff argues that the officer's subjective intent – allegedly to arrest Plaintiff to retaliate for Plaintiff's "busting [the officer's] balls," (AC ¶ 19) – means the arrest was not privileged. (Doc. 31 at 11-12.) But the "arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

8

from which one could infer that Defendant Brito knew of those circumstances. Indeed, the only facts alleged are that Plaintiff had pulled his car off of the parkway, parked it in a grassy area nearby, and was standing outside of his car. These facts, standing alone, establish probable cause (or at least arguable probable cause) for Plaintiff's arrest.

In the alternative, to the extent that the AC could be read as alleging that Plaintiff's car was so far from the special parkways as to be considered off of them entirely – an unreasonable construction that Plaintiff does not urge – a reasonable police officer would have reason to believe that Plaintiff had violated § 182.23, which prohibits entering or exiting the special parkway except by designated entrances and exits.

Because probable cause is a complete defense to a claim for false arrest, *Figueroa*, 825 F.3d at 99, Plaintiff's claim must be dismissed.

## C. Unlawful Search

"It is axiomatic that pursuant to a lawful arrest, an officer can search a defendant regardless of whether a search warrant has been obtained." *Hernandez v. City of N.Y.*, No. 00-CV-9507, 2004 WL 2624675, at *8 (S.D.N.Y. Nov. 18, 2004) (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969)). Here, Plaintiff complains of an "intrusive" search of his person at the scene following his arrest, which included a pat down, (AC ¶¶ 32, 33), and "a much more intrusive search of his person" once he was taken into custody, (*id.* ¶ 33).

Plaintiff does not seem to contest that the searches were performed pursuant to his arrest, but argues that the arrest itself was not supported by probable cause. (*See* Doc. 31 at 15.) As the Court has already found that probable cause existed to arrest Plaintiff, his claim based on the

search pursuant to that arrest must fail. *See Perez v. City of N.Y.*, No. 07-CV-10319, 2009 WL 1616374, at *6 (S.D.N.Y. June 8, 2009).[4]

**D. *Monell* Claim**

"To hold a city liable under 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2009) (internal quotation marks omitted).

The existence of probable cause means there is no underlying constitutional violation by Brito for which the County could be responsible. *See Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013). If there were only arguable probable cause, such that Brito is entitled to qualified immunity, the possibility of municipal liability still exists if the municipality's custom or policy caused a violation of the Plaintiff's federal rights. *See id.* at 254.

> To allege such a policy or custom, the plaintiff may assert:
>
> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (internal quotation marks omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014). "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details."

---

[4] Even if Brito had only arguable probable cause to arrest, the search incident to arrest cannot give rise to liability. *See Schaffer v. Beringer*, 842 F.3d 585, 593 (8th Cir. 2016).

10

*Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

To support his *Monell* claim, Plaintiff offers only conclusory allegations of any such official policy or custom, and of any such failure to train amounting to deliberate indifference. (*See, e.g.*, AC ¶ 42 ("The acts complained of were carried out . . . pursuant to the customs, policies, usages, practices, procedures and rules of the . . . County."); *id.* ¶ 45 (County had "custom, policy, and practice of arresting individuals pursuant to VTL 1194(1)(b) and without charging them with any crime or additional traffic infraction . . . ."); *id.* ¶ 48 ("It was the policy and/or practice of the . . . County . . . to inadequately supervise and train its law enforcement personnel in determining whether probable cause for arrest exists, how to properly interpret VTL 1194(1)(b) and other applicable statutes, thereby failing to adequately discourage Constitutional violations on the part of Defendants."); *id.* ¶ 49 ("It was the policy and/or practice of the . . . County . . . to inadequately investigate complaints of law enforcement personnel's misconduct, negligence, recklessness and acts of misconduct were instead tolerated by [the County.] Specifically complaints of lack of probable cause to arrest, complaints of retaliation and falsely detaining individuals if the officer believed they were being given a hard time were not adequately investigated but instead tolerated."); *id.* ¶ 54 ("Defendant County . . . has acted with a callous, reckless and deliberate indifference to Plaintiff's Constitutional rights and has failed to properly sanction or discipline police officers, including the Defendant in this case for violation of Constitutional rights of citizens thereby causing defendant to engage in unlawful conduct.").) He provides no facts rendering these conclusions plausible.

"While a court may not apply a heightened pleading standard to *Monell* claims, 'boilerplate' conclusions as to municipal liability will not suffice, even at this early stage of the

litigation." *See Betts*, 2013 WL 311124, at *15 (citation omitted).  Plaintiff has not alleged any nonconclusory facts about the municipal defendant at all.  *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations tending to support, at least circumstantially, such an inference.") (internal quotation marks omitted); *Guerrero v. City of N.Y.*, No. 12-CV-2916, 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate claims do not rise to the level of plausibility required to state a viable *Monell* claim.") (internal quotation marks omitted).  His *Monell* claim thus fails.

## III. LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint once after having the benefit of a pre-motion letter from Defendants outlining their proposed grounds for dismissal, (Doc. 3), and my observations during the May 19, 2016 conference.  Plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to

12

cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Payne v. Malemathew,* 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

Further, Plaintiff has not asked to amend again or otherwise suggested he is in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.[5]  The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 28), and close the case.

**SO ORDERED.**

Dated: May 15, 2017
 White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[5] Because I accept Defendants' argument that Plaintiff's Amended Complaint fails to state a claim, I need not address Defendant's alternative argument for dismissal under Federal Rule of Civil Procedure 4(m) for improper service of the summons and complaint.